UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL NO. 3:13CR44 (MPS) |
| v. | : | |
| | : | |
| JAHMELL HARDING, | : | April 2, 2014 |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

The Government respectfully submits this Sentencing Memorandum with regard to defendant Jahmell Harding (the "defendant"), who is currently scheduled for sentencing on April 9, 2014.

**I.    INTRODUCTION AND BACKGROUND**

On June 27, 2013, a Federal Grand Jury returned a multi-count superseding indictment charging the defendant and fourteen co-defendants with assorted violations of the Controlled Substances Act and a related offense.  The defendant was charged as follows: (a) in Count One, with conspiracy to distribute 28 grams or more of cocaine base, in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(B); (b) in Count Thirty-Seven and Thirty-Nine, with possession with intent to distribute and distribution of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B) and/or 841(b)(1)(C); (c) in Count Forty-Nine, with possession with intent to distribute 28 grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B); (d) in Count Fifty, with possession a 12 gauge short-barreled shotgun and a Taurus .357 revolver in furtherance of a drug trafficking crime, in violation of 18 U.S.C. §§ 924(c)(1)(A), 924(c)(1)(B)(i) and 924(c)(2); and (e) in Count Fifty-One, with unlawfully possessing a short-barreled shotgun, in violation of 26 U.S.C. §§ 5841, 5845(a)(1), 5861(d) and 5871.

On January 15, 2014, the defendant pled guilty to Count One of the superseding indictment charging him with conspiracy to distribute 28 grams or more of cocaine base. The defendant's guilty plea was entered in accordance with a plea agreement with the Government. In that agreement, the parties agreed that the defendant's relevant and reasonably foreseeable offense conduct involved approximately 170 grams of cocaine base, which yields a base offense level of 28. The parties agreed that two levels should be added because he possessed a dangerous weapon, pursuant to U.S.S.G. §§ 2D1.1(b)(1). The parties also agreed that three levels should be subtracted under U.S.S.G. § 3E1.1 for acceptance of responsibility, which results in an adjusted offense level of 27. The parties further agreed that the defendant does <u>not</u> qualify for the two-level safety valve reduction under U.S.S.G. §§ 5C1.2 and 2D1.1(b)(16) because he possessed a firearm in connection with this offense. An adjusted offense level of 27 and a Criminal History Category I results in a Guideline range of 70 to 87 months of imprisonment and a fine range of $12,500 to $5,000,000.

The defendant agreed not to appeal or collaterally attack his conviction or sentence if his sentence does not exceed 87 months of imprisonment, 4 years of supervised release and a $12,500 fine. The Government further agreed that at the defendant's sentencing, the Government will move to dismiss the remaining counts of the superseding indictment as to the defendant.[1]

## II.    FACTS AND CIRCUMSTANCES OF DEFENDANT'S CONDUCT

The defendant's case was part of a long-term investigation conducted by the ATF and the DEA. As part of the investigation, law enforcement agents made numerous controlled purchases of narcotics. On November 1, 2012, a CW conducted a controlled purchase of approximately 14

---

[1] The plea agreement specifically references Counts 37, 39, 49 and 50. The Government also will move to dismiss Count 51.

grams of cocaine base from co-defendants Fabian Augustine and Anthony Harrington. During the controlled purchase, Harrington obtained the crack from the defendant, who was in his silver BMW bearing Connecticut registration "622-YPT." Harrington then passed the crack to Augustine, who conducted the hand-to-hand transaction with the CW. Investigators also observed Harrington go back to the defendant's BMW with the proceeds of the sale.

On November 9, 2012, a CW conducted a controlled purchase of approximately 30 grams of cocaine base from Augustine and Harrington. During the transaction, Augustine and Harrington got in the CW's car to discuss the transaction. From the CW's car, Harrington called the defendant and requested eight "eight balls" of crack. During this call, they also discussed Harding providing Harrington with four "eight balls" for another transaction. When Harding arrived at the transaction location, they decided to conduct the transaction around the corner because of a suspicious vehicle in the area. Harrington went to Harding's BMW bearing CT registration "622-YPT" and obtained approximately an ounce of crack. Harrington walked back to the CW's car and handed the crack to the CW in exchange for $1,140. Harrington then walked back to Harding's BMW with the narcotics proceeds. After the transaction, Harding drove his BMW back to his residence on Catherine Street in Hartford. Investigators observed two silver BMWs, both bearing CT license plates "622-YPT" in the driveway at the Catherine Street residence. It bears mentioning that the older model silver BMW was used during the November 1, 2012 transaction and the newer model silver BMW was used by Harding to conduct the November 9, 2012 transaction.

Thereafter, investigators conducting surveillance observed one or both of the silver BMWs, both bearing CT license plate "622-YPT", parked at the Catherine Street address on numerous occasions. On November 13, 2012, investigators observed both silver BMWs bearing

3

CT license plates "622-YPT" parked at the Catherine Street address.  A Hartford Police Department officer went to the address and spoke with defendant regarding the vehicles.  The defendant confirmed his ownership of the two BMWs and told the officer that he would park his vehicles properly in the future.

On December 12, 2012, investigators received authorization to intercept wire communications over a cell phone used by Harrington to conduct his narcotics trafficking activities.  Intercepted calls over Harrington's phone confirmed that the defendant was supplying Harrington with narcotics.  On December 13, 2012, for example, investigators intercepted calls and text messages between Harrington and the defendant, during which they arranged for the defendant to supply Harrington with "2".  After the defendant and Harrington arranged the deal, investigators observed the defendant drive away from his Catherine Street residence in his silver BMW and meet with Harrington on Jefferson Street in Hartford.  After a few minutes, Harrington got out of the defendant's silver BMW and the defendant drove back to his Catherine Street residence.  At the residence, investigators observed the defendant get a toddler-aged child out of the back passenger seat of his silver BMW, which he just used to deliver narcotics to Harrington, and carry the toddler from the back seat of the silver BMW and into the Catherine Street residence.

On December 14, 2012, investigators intercepted calls and text messages in which Harrington was reaching out to the defendant for narcotics.  On December 15, 2012, investigators intercepted more text messages in which Harrington was arranging to obtain narcotics from the defendant.  In one text, the defendant said, "Hell na I got like a oz left my connect won't give me shit til this done I owe him a grip, this shit weak."  In a subsequent text, Harrington said, in substance, that he would try to sell the ounce of narcotics in one deal and the defendant responded, "k."  After the defendant and Harrington made these arrangements via text message, investigators

4

conducting surveillance observed the defendant's silver BMW in Harrington's area on Jefferson Street and then observed the defendant's silver BMW back at the defendant's Catherine Street residence. Investigators subsequently intercepted Harrington confirming with Augustine that he had "that" (in reference to the narcotics that Harrington had obtained from Harding). On December 16, 2012, investigators intercepted Harrington ask the defendant for "1 of dem thangs." Harrington and the defendant agreed to meet at 8pm to conduct the transaction.

In June 2013, investigators obtained a federal arrest warrant for the defendant. On June 13, 2013, investigators went to the defendant's residence on Catherine Street in Hartford, CT to execute the arrest warrant. The defendant was living at the Catherine Street residence with his parents and his then-three year old son. When the investigators knocked and announced their presence, they were met by the defendant's mother. The defendant's mother affirmed that the defendant was in the residence, but said that she had to secure their dog before the investigators came in the residence. The defendant's mother then started yelling to alert the defendant that the police were here for him. Investigators immediately went upstairs and found the defendant in bed with his son.

After arresting the defendant, he and both his parents signed consent to search forms. From the bedroom where the defendant was sleeping with his son, officers seized the following evidence: a 12 gauge shotgun with a cut down barrel and stock; a Winchester 12 gauge shotgun shell; a body armor vest; a clear plastic bag containing approximately 2.5 grams of cocaine base; approximately 2.8 grams of MDMA ("escstasy pills"); a digital scale with white residue; two baggies containing approximately 114 grams of marijuana; an HKS speed loader for a revolver; six rounds of Winchester .357 caliber ammunition; approximately $1,700 in U.S. Currency; a boost cell phone; and a U.S. Passport for the defendant.

From a second bedroom, investigators seized the following evidence: a camouflage body armor vest; a loaded pistol magazine; eight rounds of .380 caliber ammunition; one round of Winchester .357 caliber ammunition; one round of 9mm ammunition; one round of 9mm Luger ammunition; mail addressed to Jahmell Harding; and miscellaneous paperwork in the defendant's name.

From the common living area, investigators seized the following evidence: one Taurus .357 revolver; five rounds of Winchester .357 caliber ammunition; one Winchester .357 spent casing; one brown holster; two clear bags containing approximately 124.1 grams of cocaine base; a bag containing approximately 3.5 grams of cocaine; and a pellet gun.  When investigators seized the narcotics, the defendant said "everything is mine" in reference to the seized evidence. Investigators also found a 2003 BMW silver sedan with Connecticut license plate 734-TDN. Connecticut Department of Motor Vehicles information shows no record for license plate "734-TDN."  Investigators seized car repair documents from the BMW in the name of the defendant, indicating that at the time of the repair the vehicle's license plate was "622-YPT." During this investigation, surveillance officers observed CT license plate "622-YPT" on the BMW on numerous occasions.  As of March 30, 2013, this plate was suspended for no insurance.

In sum, the evidence establishes that the defendant conspired with Anthony Harrington and others to possess with intent to distribute and to distribute 28 grams or more of cocaine base.  In addition, the evidence establishes that the defendant's relevant and reasonably foreseeable offense conduct involved more than 112 grams, but less than 176 grams, of cocaine base.

### III.     THE DEFENDANT'S GUIDELINE RANGE

The government agrees with the Guideline calculation set forth in the PSR. Specifically, the defendant's relevant and reasonably foreseeable offense conduct involved at least

6

112 grams, but less than 196 grams, of cocaine base, which yields a base offense level of 28. See PSR ¶ 14. Two levels should be added because he possessed a dangerous weapon, pursuant to U.S.S.G. §§ 2D1.1(b)(1). See PSR ¶ 15. After a three level reduction under U.S.S.G. § 3E1.1 for acceptance of responsibility, the defendant's adjusted offense level is 27. See PSR ¶ 23. An adjusted offense level of 27 and a Criminal History Category I results in a Guideline range of 70 to 87 months of imprisonment, a fine range of $12,500 to $5,000,000 and a supervised release term of 4 years to life.

However, consistent with the recent proposed amendments to the Sentencing Guidelines, the Government would agree to a 2-level downward variance to this Guideline range. A 2-level downward variance would place the defendant at a total offense level of 25. A total offense level of 25, again assuming a Criminal History Category I, would result in a Guideline imprisonment range of 60 to 71 months' imprisonment, a Guideline fine range of $10,000-$5,000,000 (U.S.S.G. § 5E1.2(c)(4)) and a supervised release term of 4 years to life.

### IV.     A SENTENCE OF 60 MONTHS' IMPRISONMENT IS APPROPRIATE

The Government respectfully submits that the Court should impose a sentence within the defendant's guideline range (i.e., between 60 and 71 months' imprisonment) for several principal reasons. First, such a sentence should be imposed to reflect the seriousness of the criminal activity committed by the defendant. The defendant was distributing crack cocaine in Hartford, CT. Trafficking in drugs like cocaine base, in particular, has had an especially destructive impact on far too many residents and families in Hartford, CT. What is especially troubling is that the defendant knows, from his personal experience, the destructive impact that drugs have on families and yet the defendant chose to distribute cocaine base. Further, the defendant did not deal drugs to support his own addiction; rather, he sold drugs for profit. In addition, the defendant's offense

was not a one-time lapse in judgment. On two occasions in November 2012, the defendant supplied Harrington with a half ounce and an ounce of crack, which Harrington sold to a CW. Intercepted calls in December 2012 revealed that the defendant still was selling cocaine base. In June 2013, investigators seized redistribution quantities of cocaine base and other evidence revealing that the defendant was continuing to sell cocaine base. Additionally, based on intercepted calls and surveillance, the defendant had his young child with him in his silver BMW when the defendant distributed narcotics to co-defendant Anthony Harrington on December 15, 2012. Moreover, the defendant stored *narcotics, firearms and body armor* at his residence, which he shared with his parents and his toddler-aged child. Indeed, investigators seized a bag containing cocaine base, ecstasy pills, a digital scale with white residue, marijuana, approximately $1,700, a 12 gauge shotgun with a cut down barrel, a Winchester 12 gauge shotgun shell and a body armor vest from the bedroom where the defendant was found sleeping with his young child. Investigators also seized approximately 124 grams of cocaine base, cocaine, marijuana, a firearm, numerous rounds of ammunition and another body armor vest from other rooms -- including common areas -- within the defendant's residence. Far too often, the intersection of drug trafficking and firearms result in tragic consequences. When drug traffickers maintain and use firearms as a tool of their trade, deadly violence can – and far too often does – result. A sentence to a significant term of imprisonment is necessary to reflect the seriousness of the defendant's criminal activity, as well as to promote respect for the law and to provide just punishment for the offense. See 18 U.S.C. § 3553(a)(2)(A).

  Second, a sentence of 60 to 71 months' imprisonment would appropriately protect the public, see 18 U.S.C. § 3553(a)(2)(C), and provide adequate deterrence to future criminal conduct of the defendant and others. See 18 U.S.C. § 3553(a)(2)(B). A definitive and clear message

must be sent that drug dealing will be appropriately punished.   A sentence of 60 to 71 months' imprisonment would send an appropriate message not only to the defendant, but also to others in the community, that dealing cocaine base -- and maintaining and stashing crack with body armor, firearms (including a sawed off shotgun) and ammunition -- will not be tolerated by this Court.

## V.     CONCLUSION

For the foregoing reasons, the Government submits that a sentence of 60 to 71 months of imprisonment, would be reasonable, appropriate and not greater than necessary to achieve the purposes of sentencing under 18 U.S.C. §3553(a).

>Respectfully submitted,
>
>DEIRDRE M. DALY
>ACTING UNITED STATES ATTORNEY
>
>*/s/ Geoffrey M. Stone*
>
>GEOFFREY M. STONE
>ASSISTANT UNITED STATES ATTORNEY
>Federal Bar No.   CT 25326

## CERTIFICATE OF SERVICE

This is to certify that on April 2, 2014, a copy of the foregoing Sentencing Memorandum was filed electronically and served by mail on anyone unable to accept electronic filing.   Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail on anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.   Parties may access this filing through the Court's CM/ECF System.

>*/s/ Geoffrey M. Stone*
>
>GEOFFREY M. STONE
>ASSISTANT UNITED STATES ATTORNEY