1                    UNITED STATES DISTRICT COURT

2                       DISTRICT OF CONNECTICUT


4        ---------------------------x

5     UNITED STATES OF AMERICA
                   Plaintiff,          3:13CR44 (MPS)
6
              vs.
7
      FABIAN AUGUSTINE,                 February 19, 2014
8                   Defendant
      ---------------------------x
9
                                       Federal Building
10                                     915 Lafayette Boulevard
                                       Bridgeport, Connecticut
11

12
                          CHANGE OF PLEA
13

14

15
      Held Before:
16         The Honorable William I. Garfinkel
                U.S.D.C. Magistrate Judge
17

18

19

20

21

22

23              FALZARANO COURT REPORTERS, LLC
                   117 North Saddle Ridge
24               West Simsbury, CT 06092
                      860.651.0258
25

1        APPEARANCES:

2            For the Plaintiff:

3                UNITED STATES ATTORNEY'S OFFICE
                 1000 Lafayette Boulevard
4                Bridgeport, CT 06604
                 203.696.3000
5                    By:  VANESSA RICHARDS, ESQ.

6            For the Defendant:

7                New Haven Legal Assistance Association
                 426 State Street
8                New Haven, CT 06510
                 203.946.4811
9                    By:  ALLISON M. NEAR, ESQ.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1              **(Commenced:  2:58 p.m.)**

2

3         THE COURT:  We're here on

4    Mr. Augustine's matter, and we're here for a

5    change of plea.  And I think, you know, I

6    have a copy of the plea agreement.

7              What we'll do is get appearances from

8    counsel.  There's a court reporter here and

9    we'll have a, what we call, a rough

10   transcript made for Judge Shea, who will be

11   the sentencing judge and would have to

12   approve any recommendation, and we'll go from

13   there.

14          So, first, counsel for the government.

15         MS. RICHARDS:  Good afternoon, your

16   Honor.  Vanessa Richards for the government

17   standing in for the assigned AUSA, Jonathan

18   Freimann.

19         MS. NEAR:  Good afternoon.  Allison Near

20   for the defendant, Fabian Augustine.

21         THE COURT:  Good to see you again.

22         MS. NEAR:  Good to see you too.

23         THE COURT:  So the first thing we have

24   to do -- well, the next thing we have to do

25   is discuss consent to proceed before me.  And

1          Mr. Augustine and the government each have

2          the right to proceed before Judge Shea, who

3          would be the sentencing judge.  On the other

4          hand, they could proceed before me today, and

5          if everything is in order, as a United States

6          magistrate judge, I could recommend to Judge

7          Shea that he accept and approve the guilty

8          plea.

9               So it's the government's intention they

10          wish to go ahead today?

11          MS. RICHARDS:  Yes, your Honor.  I have

12          before me a signed consent form that's been

13          executed by the defendant and the defendant's

14          attorney.

15          THE COURT:  Okay.  And Mr. Augustine,

16          you understand that you have the right to

17          consent or to wait to proceed before Judge

18          Shea.  Do you wish to go ahead today?

19          THE DEFENDANT:  Yes.

20          THE COURT:  And so we'll get that

21          entered in the docket.  And the next thing,

22          we'll put Mr. Augustine under oath.  And he

23          does have to stand for that.

24               And the reason we put you under oath is

25          in these proceedings, you have to answer a

 1          lot of questions and it's important that, you

 2          know, you have to answer truthfully and fully

 3          to the best of your ability.  And if you

 4          didn't do that, you could be subject to

 5          penalties for false statement or even

 6          perjury.  Do you understand, sir?

 7               THE DEFENDANT:  Yes.

 8

 9          **FABIAN AUGUSTINE**, The Defendant, having

10          been duly sworn by the Clerk, was examined

11          and testified on his oath, as follows:

12

13               THE COURT:  You can be seated.  And just

14          down the road we'll ask you to stand again.

15          I will say, though, that Janet and I just

16          came off a trial where every person, when

17          asked to raise their right hand, raised their

18          left hand.  And actually one person caught it

19          and then he was trying to decide whether he

20          was just going to go with it, but then he

21          kind of did a little move and one hand went

22          down and one hand went up.  But I notice you

23          got that right, and it still counts even with

24          the other hand.

25               So, at this point, I am going to just

1          start with asking some questions,

2          Mr. Augustine, to make sure, whenever anybody

3          pleads guilty, that you're doing it of your

4          own free will, that you're doing it

5          voluntarily, and that you're of sound mind

6          and body, and that this is a situation which

7          a person who is fully competent and capable

8          of entering an informed plea is doing so.

9          So, bear with me as we go through these

10         background questions.  This is something we

11         do in every case.  And we do it for an

12         important reason because we want to make sure

13         that someone is doing this with, as I say, of

14         sound mind, and also, of their own free will.

15              So starting out, what's your full legal

16         name?

17              THE DEFENDANT:  Fabian Anthony

18         Augustine.

19              THE COURT:  And is Augustine,

20         A-u-g-u-s-t-i-n-e?

21              THE DEFENDANT:  Yes, that's correct.

22              THE COURT:  And I noticed the plea

23         agreement references some nicknames like Jay

24         and Fab, but other than that, have you ever

25         been known by any other names?

```
1                    THE DEFENDANT:  No, just that.
2                    THE COURT:  Okay.  And when were you
3          born?
4                    THE DEFENDANT:  When?
5                    THE COURT:  Yes.
6                    THE DEFENDANT:  1/19/90.
7                    THE COURT:  And where were you born?
8                    THE DEFENDANT:  Queens, New York.
9                    THE COURT:  Okay.  And did you go to
10         school in New York City or up here?
11                   THE DEFENDANT:  Not really.  I might
12         have went there elementary one time, but
13         really spent it all here.
14                   THE COURT:  And where did you go to
15         school?
16                   THE DEFENDANT:  Conard High.
17                   THE COURT:  And how far did you go?
18                   THE DEFENDANT:  I got my diploma.
19                   THE COURT:  Oh, good, okay.  And how's
20         your health today?
21                   THE DEFENDANT:  Good.
22                   THE COURT:  Are you under the care of
23         any kind of doctor or medical, counselor,
24         therapist of any kind?
25                   THE DEFENDANT:  No.
```

1              THE COURT:  Are you on any medication?

2              THE DEFENDANT:  No.

3              THE COURT:  Do you feel clear headed?

4              THE DEFENDANT:  Yes.

5              THE COURT:  And what -- well, it's

6         important because -- it's an important

7         decision.  I don't mean to ask the questions

8         to pry.  I just need to make sure that we're

9         doing something that's reliable.

10              So let's say -- I also have to ask you,

11         within the last couple of days have you had

12         anything at all in any way that could affect

13         the clarity of your thinking?  Anything to

14         drink, eat, ingest, in any way, medication?

15              THE DEFENDANT:  No.

16              THE COURT:  And over the course of the

17         case, you've been represented by counsel.

18         And have you had as much time as you would

19         like to go over with her the things that you

20         need answered before you make a decision to

21         plead guilty?

22              THE DEFENDANT:  Yes.

23              THE COURT:  Have you discussed with her,

24         for example, the actual charges in the case?

25         What the charges in the indictment are?

1            THE DEFENDANT:  Yes.

2            THE COURT:  And have you talked about

3       things, without getting into the details, but

4       like what the maximum possible sentence could

5       be?

6            THE DEFENDANT:  Yes.

7            THE COURT:  And do you recall talking

8       about what we call the Sentencing Guidelines?

9       Does that ring a bell?

10            THE DEFENDANT:  Yes.

11            THE COURT:  And do you understand that

12       no one could tell you exactly today what your

13       sentence is going to be; do you understand

14       that?

15            THE DEFENDANT:  Yes.

16            THE COURT:  And have you been satisfied

17       with the representation you've gotten from

18       counsel?

19            THE DEFENDANT:  Yes.

20            THE COURT:  And let me ask, Ms. Near,

21       have you had any difficulty communicating

22       with Mr. Augustine?

23            MS. NEAR:  No, your Honor.

24            THE COURT:  And are you confident in his

25       being fully capable and competent to enter a

1  plea?

2  MS. NEAR:  Yes, your Honor.

3  THE COURT:  And have you had as much

4  time as you would like, just based on your

5  experience, to make sure that he understands

6  everything you feel he should before making a

7  decision?

8  MS. NEAR:  Yes, your Honor.

9  THE COURT:  And you don't know of any

10  reason why we shouldn't go forward?

11  MS. NEAR:  No.

12  THE COURT:  And also, just to be clear,

13  you as well; no reason that we shouldn't go

14  forward?

15  MS. RICHARDS:  No, your Honor.

16  THE COURT:  So I have to go over what

17  happens in terms of the rights anybody

18  pleading guilty gives up.  And if you do

19  plead guilty, there won't be any trial.  And

20  you need to understand, as I'm sure you do,

21  but I just need to remind you, that in our

22  system, you don't have to plead guilty, even

23  if you know you are guilty.  Because if you

24  plead not guilty, you would be entitled to a

25  trial, what we call a speedy public trial, by

1     a jury here in Connecticut before a federal

2     judge.  And you would be presumed innocent

3     and the judge would tell the jury that if the

4     government didn't meet its burden to prove

5     you guilty beyond a reasonable doubt, they

6     would actually have the legal obligation to

7     find you not guilty.  That's something you're

8     giving up.  All these rights are things

9     you're giving up by pleading guilty.  Do you

10    understand that, sir?

11          THE DEFENDANT:  Yes.

12          THE COURT:  So if you had a trial, you

13    would continue to have, as you have had

14    throughout, the assistance of counsel who

15    could try the case for you and help you

16    prepare for trial.  And she would be able, on

17    your behalf, to compel witnesses to come to

18    court who could testify before you.  And

19    that's something you would be giving up, by

20    pleading guilty.  Do you understand?

21          THE DEFENDANT:  Yes.

22          THE COURT:  And anybody who could be a

23    witness against you, would have to come to

24    court, testifying in your presence and your

25    lawyer would be able to cross examine them,

1          as well as object to other evidence the

2          government introduces.  Do you understand,

3          sir?

4                    THE DEFENDANT:  Yes.

5                    THE COURT:  And at trial, if you wanted

6          to, it would be entirely your right to

7          testify, but you couldn't be made to.  And if

8          you chose not to testify, the judge would

9          make sure the jury understood that they could

10         not hold that against you.  Do you understand

11         that, sir?

12                   THE DEFENDANT:  Yes.

13                   THE COURT:  So you have what we call

14         that right against self-incrimination, the

15         right to be silent.  So, if you were to plead

16         guilty, that's a right you'd be giving up.

17         You'd have to acknowledge what you did so the

18         court could find that the guilty plea should

19         be accepted.

20                   So you lose your right not to

21         incriminate yourself by pleading guilty.  Do

22         you understand that, sir?

23                   THE DEFENDANT:  Yes.

24                   THE COURT:  And again, you would not

25         have to prove yourself not guilty.  All the

1     burden would be on the government, and the

2     government would have to introduce evidence,

3     competent evidence to show that you are

4     guilty beyond a reasonable doubt.  And if

5     they failed, the jury would have to find you

6     not guilty.

7          On the other hand, if you plead guilty,

8     there simply would be a judgment of guilty,

9     and the case will move on to the sentencing

10    phase.  Do you understand, sir?

11         THE DEFENDANT:  Yes.

12         THE COURT:  And understanding these

13    things, is it still your wish to proceed, sir?

14         THE DEFENDANT:  Yes.

15         THE COURT:  Now, the plea agreement

16    probably has, as most do, a section limiting

17    the scope of any appellate rights.  Could you

18    just address that briefly?

19         MS. RICHARDS:  Certainly, your Honor.

20    It appears at subsection six on page four of

21    the plea agreement, entitled "Waiver of Right

22    of Appeal or Collaterally Attack a Sentence."

23    The paragraph contained under that subsection

24    makes clear that the defendant is waiving his

25    right to appeal both his conviction and his

1      sentence, both to appeal it and collaterally

2      attack it.

3           The conviction entirely is the sentence

4      to the extent that he is sentenced to 87 --

5      no more than 87 months, a four year term of

6      supervised release, $100 special assessment

7      or a $12,500 fine, even if the court imposes

8      sentence pursuant to an analysis different

9      from what is contained within the agreement.

10          THE COURT:  So the plea agreement does

11     limit the circumstances in which there could

12     be an appeal.  Do you understand, sir?

13          THE DEFENDANT:  Yes.

14          THE COURT:  And also, there could be

15     what we sometimes refer to as collateral

16     consequences or other consequences to a

17     guilty plea.  And you could, for example,

18     lose certain rights, like, the right to hold

19     public office, or to vote, to serve on a

20     jury, or to possess a firearm.  And also, if

21     your guilty plea is accepted, it would be a

22     felony conviction, which would allow for the

23     collection of a DNA sample for inclusion in

24     the federal database.

25          Other possible consequences of a guilty

1       plea and the conviction that goes along with

2       it could affect getting certain kinds of

3       licenses or certifications.

4           And while no one expects this, if down

5       the road you ever were to have another

6       criminal case, this earlier conviction from

7       this case, could lead to either enhanced

8       penalties or additional charges.  Do you

9       understand that there's these other

10      consequences to a guilty plea as well, sir?

11          THE DEFENDANT:  Yes.

12          THE COURT:  And still you wish to go

13      forward, sir?

14          THE DEFENDANT:  Yes.

15          THE COURT:  So at this point, I'm going

16      to turn to Ms. Richards again and ask if you

17      can summarize the rest of the plea agreement.

18      And what I typically do is I go over the

19      maximum possible penalties and I talk a

20      little bit about the guidelines, but I don't

21      personally address the particular Guideline

22      ranges or stipulations.  I leave that for you

23      in summarizing it.

24          MS. RICHARDS:  Fair enough.  Thank you,

25      your Honor.  The agreement is a standard plea

1      agreement entered into by the United States

2      and the defendant, Fabian Augustine.

3          The first page addresses the plea and

4      the offense.  It talks about the fact that

5      the defendant is pleading guilty to Count One

6      of the superceding incident, charging him

7      with conspiracy to distribute and possess

8      with intent to distribute 28 grams or more of

9      the cocaine base, in violation of Title 21,

10     United States Code, Sections 846, 841(a)(1),

11     841(b)(1)(B).

12          It then lays forth the three elements

13     the government would have to prove in order

14     to convict the defendant.  Those elements are

15     as follows:  That from January 2011 through

16     June 2013 a conspiracy, i.e., an agreement

17     existed between two or more persons to

18     possess with intent to distribute and to

19     distribute mixtures and substances containing

20     a detectable amount of cocaine base; two,

21     that the defendant knowingly, willfully, and

22     voluntarily agreed to participate in the

23     conspiracy; and third, that the amount of the

24     controlled substance which the members of the

25     conspiracy conspired to possess with intent

1          to distribute was 28 grams or more of a

2          mixture and substance containing a detectable

3          amount of cocaine base.

4              Your Honor then it goes through maximum

5          penalties.  That's the next section that

6          talks about what the maximum penalties are in

7          this case.

8              The next section is the Sentencing

9          Guidelines.  This basically sets forth the

10         fact that the Sentencing Guidelines are the

11         beginning point for Judge Shea.  They're not

12         mandatory.  They're the start for him to

13         determine what an appropriate sentence is,

14         and he needs to look at the other factors

15         enumerated in 18 U.S.C. 3553(a) to tailor an

16         appropriate sentence.

17             That section also talks about the fact

18         -- the section of the plea agreement also

19         talks about the fact that Judge Shea is not

20         bound by this agreement and he can basically

21         sentence the defendant, within the statutory

22         framework, to whatever sentence he deems

23         appropriate.

24             If he deviates from this plea agreement

25         and sentences the defendant to something

1     other than what's contemplated by the

2     agreement, the defendant cannot withdraw his

3     guilty plea at that time on that basis.

4        The second section talks about

5     determination of quantity.  Here, it

6     basically says that the parties agree and

7     acknowledge that the defendant's relevant and

8     foreseeable conduct involved approximately

9     112 to 196 grams of cocaine base, and between

10     10 and 20 grams of heroin.  The defendant's

11     waived his right to a jury trial and

12     sentencing hearing in connection with that

13     issue.

14        Next section is acceptance of

15     responsibility.  This essentially says that

16     in light of the fact that he is timely

17     pleading guilty, the government has

18     acknowledged that he's entitled to a

19     two-point reduction for acceptance of

20     responsibility.

21        In the event that he complies with the

22     terms and provisions that are laid forth in

23     this section, the government, at the time of

24     sentencing, will move for a third point

25     reduction.  And it goes through the

1    circumstances under which the government will

2    not do that.

3         So, in other words, if he violates the

4    terms that are listed -- the things that are

5    listed in this agreement, we would not be

6    doing that.

7         There's a stipulation that is attached

8    to this agreement.  The next section talks

9    about the fact that it is incorporated into

10   the plea agreement, and it, however, is not

11   the full scope of the defendant's conduct.

12   In other words, the government is going to be

13   telling probation about other things,

14   potentially, than what's listed in the

15   stipulation.  And the defendant understands

16   that that is okay, and that the stipulation

17   is not binding on the court.

18        The Guideline stipulation is next.  The

19   Guideline stipulation says that the defendant

20   falls within criminal history category one;

21   that he agrees that the narcotics that were

22   relevant and readily foreseeable to him yield

23   a base level offense of 28.  He acknowledges

24   that there is a two-level enhancement because

25   he had a dangerous weapon.

1          We further stipulate that there is a

2      three-level reduction for acceptance of

3      responsibility.  And that results in an

4      adjusted level of 27.  An adjusted offense

5      level of 27, assuming a criminal history

6      category of one, would result in a range of

7      70 to 87 months imprisonment, and a fine in

8      the range of $12,500 to $125,000.

9          The parties agree that the defendant is

10     not safety valve eligible, in light of the

11     fact that he possessed a weapon.  And both

12     parties are reserving their rights to seek a

13     departure and nonguideline sentence or to

14     object as well to a departure or nonguideline

15     sentence.

16         Again, the defendant expressly

17     understands that the court is not bound by

18     this agreement, and can reach whatever

19     sentence it deems appropriate, and he will

20     not be allowed to withdraw his guilty plea in

21     the event that that happens.

22         We talked about the waiver of the right

23     of appeal or to collaterally attack the

24     sentence.  That's the next provision.

25         Information to the court is the next

1       section.  That just basically talks about the

2       fact that the government is going to be

3       talking to probation.  The defendant is going

4       to be talking to probation.  Probation is

5       going to be getting a bunch of information

6       together for the court that the court will

7       use in determining an appropriate sentence.

8           Waiver of rights.  Your Honor has gone

9       through most of this.  The waiver of trial

10      rights and consequences of the plea.  We

11      talked about, as well as collateral

12      consequences which appears on page six.

13          The defendant, however, is also waiving

14      any right to an argument based on statute of

15      limitations.  If for whatever reason, in the

16      future, his plea is vacated, the government

17      would be able to reinstate charges against

18      him without him being able to raise the

19      defense that the statute of limitation has

20      expired and prevented us from doing that.  So

21      this essentially tolls the statute of

22      limitations.

23          The next section is acknowledgment of

24      guilt, voluntariness of the plea.  It

25      basically says that the defendant is pleading

1        guilty because he is, in fact, guilty and

2        that he's entering into this agreement free

3        of coercion, threats, etcetera.

4            Scope of the agreement is the next

5        section.  That talks about the fact that the

6        defendant acknowledges that the agreement is

7        limited to the Department of Justice and

8        can't bind any other federal authorities, or

9        state or local authorities.

10            Collateral consequences, again, your

11        Honor has gone through that.

12            The next section is satisfaction of

13        federal criminal liability.  If accepted by

14        the court, the defendant's plea will satisfy

15        his criminal liability resulting from the

16        narcotics activity which is charged in the

17        superceding indictment.  So, at sentencing

18        the government will move to dismiss Counts

19        27, 28, 29, 30, 31, 32, 34, 35, 36, 37, 38,

20        39, 40, 43, 44, and 45 of the superceding

21        indictment as they relate to the defendant.

22        However, if before sentencing he violates any

23        term or condition of the agreement, engages

24        in criminal activity or fails to appear, the

25        government can void any or all of this

1          agreement, and once again, the defendant will

2          not be allowed to withdraw his plea of

3          guilty.

4                   No other promises is the last section.

5          It means exactly what it says.  The only

6          promises between the government and the

7          defendant are those that have been reduced to

8          writing in this agreement.

9                   And again, the last two pages of the

10         agreement, pages nine and ten, are

11         stipulation of offense conduct.

12                  THE COURT:  Thank you.  And before I ask

13         Mr. Augustine some questions about his

14         understanding and consent to the plea

15         agreement, I just want to make sure that I

16         remind him what the maximum possible

17         penalties are and just talk a little bit

18         about the Guidelines.

19                  The maximum possible penalties for this

20         count of the indictment that he's pleading to

21         are 40 years of imprisonment, a fine of as

22         much as $5 million, and a mandatory minimum

23         penalty of five years in prison.  However,

24         any sentence of incarceration must include a

25         term of supervised release of at least four

1          years and as much as life.

2               Supervised release occurs after the

3          term of imprisonment.  And there will be

4          conditions.  And if any of the conditions are

5          violated, he could be required to serve a

6          further term of imprisonment of up to three

7          years with no credit for the time spent on

8          supervised release.

9               The plea agreement gets into how fines

10         are assessed and collected.  But in addition

11         to that, there is something that is mandatory

12         and that's a $100 special assessment on the

13         count of conviction, and that's due by the

14         date of sentencing.

15              And then with respect to the

16         Guidelines, Judge Shea, who is the sentencing

17         judge, he has to consider what we refer to as

18         the Sentencing Guidelines that are discussed

19         in the plea agreement, and that you've

20         discussed with your lawyer.  The judge has to

21         consider them.  He has to consider the

22         statute and the regulation, and the policies

23         related to the guidelines, but he does have

24         discretion.

25              So no can tell you today exactly what

1          your sentence is going to be.  In fact, if

2          Judge Shea was here, he couldn't even tell

3          you yet what your sentence is going be.

4          There will be a thorough presentence

5          investigation, a report from the probation

6          officer.  There will be recommendations to

7          the judge.  Your lawyer and the lawyer for

8          the government and you would all have a

9          chance to address the judge at sentencing,

10         but he has to make all of the determinations

11         about Guideline calculations and whether to

12         depart upward or downward.  So even though

13         you and your lawyer may have an expectation

14         or -- and also the government might as well,

15         the bottom line is that no one can tell you

16         today exactly what your sentence is going to

17         be.  We can tell you about the procedure and

18         the things that have to be considered, but

19         there is still uncertainty.  Do you

20         understand that, sir?

21              THE DEFENDANT:  Yes.

22              THE COURT:  Now, with respect to the

23         plea agreement as a whole, have you gone over

24         it in detail with your lawyer?

25              THE DEFENDANT:  Yes.

1          THE COURT:  And have you had as much

2     chance as you need to ask questions about it

3     and to make sure you understand it?

4          THE DEFENDANT:  Yes.

5          THE COURT:  And has anyone made any

6     promises to you, except what's in the plea

7     agreement itself, to get you to plead guilty?

8          THE DEFENDANT:  No.

9          THE COURT:  Has anyone tried to coerce

10     you, threaten you, force you in any way to

11     enter a guilty plea?

12          THE DEFENDANT:  No.

13          THE COURT:  It's something that you're

14     doing of your own free will after you discuss

15     the case with your lawyer?

16          THE DEFENDANT:  Yes.

17          THE COURT:  And Ms. Near, any doubt or

18     reservation at all about whether

19     Mr. Augustine understands the plea agreement?

20          MS. NEAR:  No, your Honor.

21          THE COURT:  Are you confident that he's

22     acting of his own free will?

23          MS. NEAR:  Yes, your Honor.

24          THE COURT:  And Ms. Richards, the same?

25          MS. RICHARDS:  Yes, your Honor.

1          THE COURT:  So at this point then,

2     Mr. Augustine, if you could sign the plea

3     agreement, if you haven't already, as could

4     counsel for the government.

5          And then since it's for Judge Shea, we

6     docket it and then return it to the

7     government and you take it to sentencing.

8          There's also a stipulation of offense

9     conduct that can be signed as well.  And

10    we'll get into the offense conduct in just a

11    couple of minutes.

12         **(Pause.)**

13         MS. RICHARDS:  Your Honor, at this point

14    could I hand up the signed plea agreement as

15    well as the -- oh, I'm sorry.

16         **(Pause.)**

17         MS. RICHARDS:  Now, if I can hand up the

18    fully executed plea agreement, as well as the

19    consent form that's been fully executed by

20    all parties.

21         THE COURT:  Sure.  At this time then I'm

22    going to ask if you could summarize the

23    offense conduct.  In other words, what the

24    government would show at trial to establish

25    that Mr. Augustine is, in fact, guilty of the

1    offense to which he's pleading guilty.   There

2    are three elements to this one count.   And

3    then if could go over what you or your

4    colleagues would show at trial to establish

5    beyond a reasonable doubt that, in fact, all

6    these elements are satisfied.

7         MS. RICHARDS:   Certainly, your Honor.

8    The defendant's case was part of a long term

9    Title III investigation conducted by the ATF.

10   As part of the investigation, between August

11   2012 and December 2012, law enforcement

12   agents made approximately sixteen controlled

13   purchases of crack cocaine and or heroin from

14   the defendant.   The quantities in these

15   controlled purchases ranged from as low as

16   1.4 grams of crack cocaine, to on several

17   occasions as much as an ounce of crack

18   cocaine at a time.   Further, nearly all of

19   the controlled purchases involving heroin

20   were for a stack or 100 baggies of heroin.

21        During several of these controlled

22   purchases, the defendant discussed with a

23   confidential informant and an undercover

24   agent committing an armed robbery of a drug

25   dealer, more specifically that the defendant

1          claimed that he and his crew had committed

2          such robberies before.  They made plans to

3          rob a guarded stash house.  And the defendant

4          showed the CI and UC a firearm he was holding

5          and claimed to have plenty of guns.

6               Before a final meeting to make

7          arrangements for the planned robbery the

8          defendant was arrested by the Glastonbury

9          Police Department on state drug charges.

10              If the case were to proceed to trial,

11         the government would be prepared to offer

12         intercepted calls involving the controlled

13         purchases, testimony of surveillance

14         officers, and video and audio recordings of

15         the controlled purchases themselves,

16         including those discussing armed robbery.  In

17         fact, one of those videos captured the

18         defendant actually showing the UC and the CI

19         his firearm.

20              THE COURT:  Now, the actual charge to

21         which he's pleading guilty though is the

22         conspiracy to distribute, right?

23              MS. RICHARDS:  Yes, agreed, your Honor.

24         I don't know whether or not in the stipulated

25         offense conduct there was mention of the

1        robbery or not.

2              THE COURT:  I believe there is some

3        reference to that.

4              MS. RICHARDS:  In light of the fact that

5        it has been included and there is an

6        enhancement of the firearm, which is part of

7        the plea agreement, so I would think that

8        that would be relevant in terms of us -- just

9        in terms of generally being able to satisfy

10        the court that we have the sufficient

11        evidence to satisfy the Guidelines

12        stipulation, as well as the elements that we

13        would need to prove at trial.

14              MS. NEAR:  I just want to clarify that's

15        correct.  It's in there for the purposes of

16        the gun enhancement, and to show why the

17        safety valve doesn't apply, as opposed to

18        relevance to the penalty.

19              THE COURT:  The actual count, right?

20              MS. NEAR:  Yes.

21              MS. RICHARDS:  The government would also

22        present the signed post-Miranda statement

23        made by the defendant admitting to much of

24        the conduct.  Finally, we'd offer the

25        testimony of the chemist who tested the

1       purchased narcotics.

2              THE COURT:  And what's the location and

3       the relevant time frame for the evidence the

4       government would show at trial?  Where did it

5       take place and about what time?

6              MS. RICHARDS:  Certainly, your Honor, I

7       believe that this took place in and around --

8       certainly in the District of Connecticut.  I

9       believe this occurred in Hartford, but you

10      can correct me if I'm wrong about that.

11             MS. NEAR:  Yes, in Hartford.

12             MS. RICHARDS:  And the investigation in

13      terms of the controlled purchases from the

14      defendant occurred between August 2012 and

15      December 2012, which is smack in the middle

16      of the conspiracy.

17             THE COURT:  Right.  Okay.  So

18      Mr. Augustine, you heard what counsel for the

19      government outlined as what the government

20      would show if there were to be a trial.  Is

21      what she said correct, sir?

22             THE DEFENDANT:  Yes.

23             THE COURT:  And I have to -- there is

24      what we call a stipulation of offense

25      conduct, and that's something, before you

1          signed it, you went over that with your

2          lawyer too, sir?

3                    THE DEFENDANT:  Yes.

4                    THE COURT:  So I just need to ask a

5          couple of follow up questions, just basically

6          as I track the elements in the case.

7                    Here in Connecticut, in the Hartford

8          area, in the latter part of 2012, were you

9          part of a group of people with an agreement

10         to sort of work together to distribute and in

11         fact, did distribute substances containing

12         cocaine base?

13                    THE DEFENDANT:  Yes.

14                    THE COURT:  Okay.  And is this something

15         you did knowingly and of your own free will,

16         sir, in other words, you joined this group

17         and do these things of your own free will.

18                    THE DEFENDANT:  Yes.

19                    THE COURT:  And is it correct to say

20         that the amount of substance containing

21         cocaine base that you and other folks in this

22         agreement possessed with intent to distribute

23         was at least 28 grams?

24                    THE DEFENDANT:  Yes.

25                    THE COURT:  I think that covers it,

1          really.  Anything further I need to ask?

2               MS. RICHARDS:  Nothing from the

3          government.

4               MS. NEAR:  Nothing, your Honor.  I just

5          did want to note briefly that he did plead to

6          a lesser included offense of Count One.  So

7          it's not actually Count One of the

8          superceding indictment; it's a lesser

9          included offense, which is reflected in the

10         plea agreement.  I just wanted to note that

11         for the record.

12              THE COURT:  Yes, it is.  You're

13         absolutely right.  Thank you.  And you agree

14         with that, right?

15              MS. RICHARDS:  Yes, your Honor.

16              THE COURT:  So at this point then, I

17         think we can proceed with the plea itself.

18         Let me ask, Ms. Near, would Mr. Augustine be

19         prepared to enter his plea without the court

20         reading out loud the full text of the count?

21              MS. NEAR:  Yes, your Honor.

22              THE COURT:  Mr. Augustine, I'd just ask

23         you to stand for this part of the proceeding

24         and the clerk will put you to plea.

25              THE CLERK:  In the case of the United

1        States versus Fabian Augustine, criminal

2        number 3:13CR44 (MPS), as to Count One of the

3        superceding indictment, charging you with the

4        lesser included offense, a violation of Title

5        21, United States Code, Section 846, what is

6        your plea?

7                THE DEFENDANT:  Guilty.

8                THE CLERK:  Your Honor, the defendant

9        pleads guilty to Count One of the lesser

10       included offense in the superceding indictment.

11               THE COURT:  Thank you, sir.  You can be

12       seated.  And at this time, let me say for the

13       court that on the basis of a very thorough,

14       carefully thought out plea agreement, and

15       stipulation of offense conduct, the remarks

16       of the defendant under oath, the remarks of

17       his counsel, and counsel for the government,

18       I do find that Mr. Augustine is fully

19       competent and capable of entering an informed

20       plea.

21               I further find that he's aware of the

22       nature of the charges and the consequences of

23       the plea; that the plea is knowing and

24       voluntary, and supported by independent basis

25       in fact containing each of the essential

1    elements.  And I further find that the

2    defendant is aware of the operation of the

3    Sentencing Guidelines, and that no one can

4    tell him precisely today what his sentence is

5    going to be.

6         So, on the basis of all these findings,

7    I am going to recommend to Judge Shea that he

8    accept the guilty plea and that judgment will

9    enter.  Anticipating that he will do that,

10   and enter a judgment, I'm going to go ahead

11   and order the probation department to prepare

12   the presentence investigation and report.

13        And I can give counsel some dates we

14   have from Judge Shea's chambers.  And right

15   now, the schedule calls for the first

16   disclosure of the report, April 2nd; final

17   objections April 16th; the second disclosure

18   April 26th; with a sentencing date of May

19   29th at 11:30 in Hartford.

20        I do want to make sure that

21   Mr. Augustine understands that the next phase

22   of the case is obviously very important.  The

23   probation department does a very thorough

24   job.  And the judge looks very carefully at

25   the report and recommendation from the

1          probation department.  Because this is such

2          an important part of the case, I remind you

3          that you still have your right to counsel and

4          you should confer with your lawyer and work

5          with her in preparing for sentencing.  And

6          also, while it's generally helpful if

7          anybody, friends, family, anybody can provide

8          useful, helpful information about you to

9          probation that they do that.  But it's also

10         important that your lawyer knows any

11         information that's provided to probation on

12         your behalf.  And also if you're going to be

13         talking or communicating in any way with the

14         probation officer, you can consult with your

15         lawyer ahead of time about doing that, and

16         she could be with you at all times while you

17         communicate with the probation officer.  Do

18         you understand, sir?

19              THE DEFENDANT:  Yes.

20              THE COURT:  And I think there's

21         currently an order of detention that will

22         stay in place until sentencing.  I can't

23         think of anything else that we need to cover

24         on the record.

25              MS. RICHARDS:  That's it from the

1           government, your Honor.

2                   MS. NEAR:  Nothing from the defense,

3           your Honor.

4                   THE COURT:  Well, Mr. Augustine, I wish

5           you well.  I don't know what the sentence is

6           going to be.  I do know Judge Shea well and

7           he's a very fair and very thorough person.

8           He will spend a lot of time on this and treat

9           you fairly.  I wish you well going forward.

10          I know this is a hard.  It's good to see you

11          well represented.  And I appreciate the

12          efforts both of your lawyer and counsel for

13          the government and her colleagues in

14          preparing a very thorough agreement, and I

15          turn it over to Judge Shea at this time.

16          Thank you.

17

18                  **(Concluded:  3:34 p.m.)**

19

20

21

22

23

24

25

38

1                        CERTIFICATE

2

3            I hereby certify that the foregoing 37

4       pages are a complete and accurate

5       computer-aided transcription of my original

6       stenotype notes taken of the proceedings, which

7       were held in re:  United States of America

8       versus Fabian Augustine, held before the

9       Honorable William I. Garfinkel, USDC Magistrate

10      Judge, U.S. District, 915 Lafayette Boulevard,

11      Bridgeport, Connecticut on February 19, 2014.

12

13

14

15           /s/Irma Sanchez-Farnham

16           IRMA SANCHEZ-FARNHAM
               Court Reporter
17

18

19

20

21

22

23

24

25